UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID FEINWACHS, | Civil No.  11-8 (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| MINNESOTA HOSPITAL ASSOCIATION and MCCA, *subsidiary of the Minnesota Hospital Association*, | |
| Defendants. | |

Brian E. Wojtalewicz, **WOJTALEWICZ LAW FIRM, LTD**, P.O. Box 123, Appleton, MN 56208, for plaintiff.

Lee A. Lastovich, Brian T. Benkstein, and Elizabeth S. Gerling, **JACKSON LEWIS P.C.**, 225 South Sixth Street, Suite 3850, Minneapolis, MN 55402, for defendants.

Plaintiff David Feinwachs brings this action against the Minnesota Hospital Association and its subsidiary the MCCA (referred to collectively as "MHA"), alleging that MHA violated anti-retaliation provisions in the federal False Claims Act ("FCA") and the Minnesota False Claims Act ("MFCA") by terminating him because of his efforts to stop unlawful conduct by various HMOs.  MHA moves to dismiss Feinwachs' action, arguing that his claim is barred by collateral estoppel.  In a prior state court action, Feinwachs brought claims of tortious interference with his employment relationship against a number of healthcare organizations.  The state court granted summary judgment against Feinwachs, finding that the stated reason for Feinwachs' termination, insubordination, was not pretext for improper interference by these organizations.

Because the Court finds that this prior action did not involve the same issues as the present action, it will deny MHA's motion.

## BACKGROUND

I.  FACTUAL BACKGROUND

MHA is a "trade association representing Minnesota's hospitals and healthcare systems" that "advocates healthcare policy for its members." (Third Am. Compl. ("Compl.") ¶ 10, July 9, 2014, Docket No. 43.) Feinwachs worked at MHA for 30 years as general counsel and directed its legislative advocacy. (*Id.* ¶ 9.) Lawrence Massa, the executive director of MHA, was Feinwachs' supervisor. (*Id.*)

Starting in 2010, Feinwachs participated in "an intensive lobbying and political campaign" that he claimed was aimed at "warn[ing] Minnesota legislators and healthcare professionals about the apparent impropriety of the [Prepaid Medical Assistance Program (PMAP)] contractors receiving millions in excessive reserves from the state-federal Medical Assistance program without any true audits and inadequate accountability." (*Id.* ¶ 95.) In early 2010, Feinwachs introduced and testified on behalf of an amendment before the Minnesota House of Representatives that would have required HMOs to adopt certain accounting principles; however, the amendment was later withdrawn. (*Id.* ¶ 96.) Feinwachs alleges that following the defeat of this amendment, high-level workers from various healthcare organizations contacted Massa to complain about Feinwachs. (*Id.* ¶¶ 97, 99-100.)

In July 2010, Feinwachs directed his private attorney to question a retired Minnesota Department of Human Services employee about the "handling of Medicaid

monies by the PMAP contractors." (*Id.* ¶ 101.) On July 20, 2010, Feinwachs produced a video for the Minnesota Provider Coalition (MPC) highlighting the issue of PMAP money and HMOs. (*Id.* ¶ 102.) High-level workers from various healthcare organizations again contacted Massa to complain about Feinwachs, this time about his investigation of HMOs and his involvement in the video. (*Id.* ¶¶ 101, 103, 105.) Because of these complaints, Massa told Feinwachs not to be involved with the MPC anymore. (*Id.* ¶ 105.) However, in September 2010, Feinwachs produced a second video, nearly identical to the first, but with added findings from a later report. (*Id.* ¶ 106.) Massa received more complaints from industry employees about Feinwachs after the second video. (*Id.* ¶¶ 107-09, 111-12.)

On October 14, 2010, Massa noted that he faced pressure to fire Feinwachs, but defended him, stating, "If the plans have any credibility issues to worry about, killing the messenger isn't going to resolve this for very long in my view." (*Id.* ¶ 110.) Massa warned Feinwachs "to desist from criticizing the PMAP contracts" and told him that others were angry about the second video, which may have been seen by legislators. (*Id.* ¶ 113.) On October 20, 2010, Massa placed Feinwachs on unpaid administrative leave, stating that he had "been insubordinate following [Massa's] direct order to disengage from membership and work with the [MPC]." (*Id.* ¶ 113; *Id.*, Ex. 17.) Massa stated that by becoming involved in the second video, Feinwachs had disregarded his order. (*Id.*, Ex. 17.) On October 26, 2010, Massa told Feinwachs that he was working on an outline of "prohibitive activities" if Feinwachs was going to continue working at MHA; however, this document never arrived, and Massa terminated Feinwachs on November 9,

2010.  (*Id.* ¶¶ 113-14.)  Massa initially offered Feinwachs a severance payment of $20,000 if he agreed "to restrict his communications with the public in the future" and to release legal claims against MHA.  (*Id.* ¶ 114.)  Feinwachs alleges that the amount was later increased to $150,000, but that he declined both offers.  (*Id.*)

## II.     STATE COURT DECISIONS

In February 2011, Feinwachs filed an action in state court against the Minnesota Council of Health Plans ("MCHP"), Blue Cross Blue Shield of Minnesota, HealthPartners, Inc., and UCare Minnesota (collectively "the health plan defendants"), alleging that they tortiously interfered with his employment relationship with MHA; he also brought a defamation claim against MCHP.  *Feinwachs v. Minn. Council of Health Plans* ("*Feinwachs I*"), 62-CV-11-910, 2011 Minn. Dist. LEXIS 258, at \*2 (Minn. Dist. Ct. Dec. 30, 2011).  The court granted the health plan defendants' motion to dismiss, finding that Feinwachs

> failed to demonstrate a triable issue as to his contention that Defendants, fearful of expanded scrutiny of their business practices and profit margins, improperly orchestrated his firing by the MHA.  Specifically, he did not show that there is a fact issue as to the reliability of the unequivocal testimony of his supervisor, the executive director of the MHA, that he was fired for insubordination.

*Id.* at \*3.  The court noted that the test for tortious interference required: (1) an agreement, (2) the defendants knew of the agreement, (3) "intentional procurement of the severance of the relationship by the [d]efendants," (4) lack of justification on part of the defendants, and (5) damages to the plaintiff.  *Id.* at \*16.  Feinwachs' claim failed on the third and fourth elements, as the court found that he did not show that the health plan

defendants caused his termination or that, if they did, their actions were not justified. *Id.* at *17. The court found that the "stated reason for termination, i.e., insubordination, was not a pretext for an improper inducement of his firing." *Id.* at *18-19. The court emphasized Massa's testimony, including the following statement:

> [O]nce I clearly indicated that I wanted him to cease and desist and he went and made the video anyway, I . . . did not feel that he would necessarily follow my orders in the future and that it would undermine the effectiveness of the [MHA] and it would undermine my credibility as the leader of the [MHA].

*Id.* at *23 (alteration in original). The court found that "there can be no genuine fact dispute that once [Massa] was confronted with Mr. Feinwachs' behavior (the September video) that was directly contrary to express orders, Mr. Massa's claim of an insubordination-based termination is unassailable." *Id.* at *24-25. Finally, the court stated, "In sum, Mr. Feinwachs has not shown that there are genuine issues of material fact as to whether Defendants improperly induced his termination." *Id.* at *26.

The Minnesota Court of Appeals affirmed, stating, "Seeing no genuine issue of material fact regarding the reasons for appellant's discharge, we affirm." *Feinwachs v. Minn. Council for Health Plans* ("*Feinwachs II*"), No. A12-0375, 2012 WL 4329115, at *1 (Minn. Ct. App. Sept. 24, 2012). More narrowly, the court found, "To the extent that there was interference with Feinwachs' employment relationship evidenced by [internal emails], it clearly did not account for his discharge." *Id.* at *5. The court emphasized Massa's testimony that he supported Feinwachs until he realized that Feinwachs did not follow his direction to stop working with the MPC, that Feinwachs had been "blatantly insubordinate," and that he had to "take some sort of action." *Id.* Crediting Feinwachs'

allegation that Massa secretly supported his actions and placed him on administrative leave as a ruse, the court found that Feinwachs would have to show some evidence of interference by the health plan defendants in the three weeks between his placement on leave and his termination, which he failed to do.  *Id.* at *6.  Therefore, the court found that "no genuine issue of material fact exists on whether a breach of Feinwachs' employment relationship was procured before Massa decided to place him on administrative leave or on whether respondents thereafter interfered with Feinwachs' employment relationship with MHA."  *Id.*  The court declined to address any other arguments, including whether any interference was justified.  *Id.*

### III.     PROCEDURAL HISTORY

On January 3, 2011, Feinwachs filed a qui tam action alleging FCA claims against a number of HMOs in addition to his retaliation claims against MHA.  However, after the government chose not to intervene, the Court granted Feinwachs' motion to dismiss his claims against the HMO defendants, including HealthPartners, Inc., Medica Health Plans, HMO Minnesota, Inc., and UCare.  (Order, June 1, 2015, Docket No. 48.)  The only claims that remain are Feinwachs' whistleblower retaliation claims against MHA and its subsidiary MCCA under the FCA and state law, found in counts eight and nine of the complaint.  (*See* Compl. ¶¶ 189-92.)

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). An affirmative defense, such as res judicata, may be raised in a motion to dismiss if its applicability "is apparent on the face of the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 763-64 (8th Cir. 2012) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008)). In reviewing such a motion, the "face of the complaint" consists of "public records and materials embraced by the complaint," including prior court orders and judgments. *Id.* at 764 (quoting *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006)).

### II. FEINWACHS' CLAIMS

Feinwachs brings a retaliation claim under the FCA. The applicable statute provides that:

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  To establish an FCA retaliation claim, a plaintiff must show that "(1) he engaged in conduct protected by the FCA; (2) [the employer] knew he engaged in the protected activity; (3) [the employer] retaliated against him; and (4) the retaliation was motivated solely by [the employee's] protected activity." *Townsend v. Bayer Corp.*, 774 F.3d 446, 456-57 (8th Cir. 2014), *reh'g denied* (Jan. 27, 2015).  The claim can be shown with direct or indirect evidence, and "[w]hen an employee presents evidence showing an employer's stated reason for taking an adverse action against him is pretextual, such evidence also serves to prove retaliation." *Id.*

Feinwachs also alleges two state law claims.  First, Feinwachs brings a claim under Minnesota's version of the FCA.[1]  Courts have interpreted other provisions of the Minnesota FCA "under a unified FCA framework" "[b]ecause the Minnesota FCA parallels the federal FCA." *Olson v. Fairview Health Servs. of Minn.*, No. 13-2607, 2015 WL 1189823, at *7 (D. Minn. March 16, 2015).  Accordingly, the Minnesota FCA action is interpreted in line with the FCA standard already discussed.  Second, Feinwachs brings

---

[1] MHA argues in a footnote that Feinwachs' claim under Minn. Stat. § 15C.14 should be dismissed because the statute was repealed and restated in 2013.  MHA relies on *Firstcom, Inc. v. Qwest Corp.*, in which the Eighth Circuit stated, "It is well established that when a statute is repealed or otherwise becomes inoperative no further enforcement proceedings can take place unless 'competent authority' has kept the statute alive for that purpose."  555 F.3d 669, 676 (8th Cir. 2009) (quoting *United States v. van den Berg*, 5 F.3d 439, 441 (9th Cir. 1993)).  The Court finds this principle inapplicable to the present case.  The provision in effect when Feinwachs filed his claim was the now-repealed Minn. Stat. § 15C.14.  In 2013, the Minnesota legislature amended its False Claims provisions, Chapter 15C.  *See* Act of Apr. 22, 2013, ch. 16, 2013 Minn. Laws. 95.  The amendment added a provision entitled section 15C.145 and repealed section 15C.14, among other changes.  *Id.* at 101.  The new provision essentially adopts federal FCA language, and the content is substantially similar to the old version, which was cited by Feinwachs.  *Compare* Minn. Stat. § 15C.145(a), *with* Minn. Stat. § 15C.14(b) (2009).  There is no indication that the change in wording was meant to create a gap in whistleblower protection, and MHA has not provided any case law suggesting that the repeal and restatement of a statutory provision erases an individual's opportunity to pursue relief under the provision.

a state claim under Minnesota's whistleblower law, Minn. Stat. § 181.932, Subd. 1. Courts apply the *McDonnell Douglas* burden shifting analysis to the whistleblower action. *Pearson v. City of Big Lake*, 689 F. Supp. 2d 1163, 1187 (D. Minn. 2010) (citing *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034-35 (8th Cir. 2005)).

### III.     COLLATERAL ESTOPPEL

MHA brings this motion to dismiss on the basis that collateral estoppel bars Feinwachs' suit because the legitimacy of Feinwachs' termination was already decided in the prior state court proceedings.[2] Feinwachs disagrees, arguing that the legal issues in the instant action are distinct because this case involves allegations of retaliation for FCA-protected activity rather than tortious interference by third parties.

In determining whether a state court decision precludes an action in federal court, the Court applies state law. *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 509 (8th Cir. 2012) ("By enacting the Full Faith and Credit Statute, 28 U.S.C. § 1738, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." (internal quotation marks omitted) (quoting *Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). Under Minnesota law, collateral estoppel applies where:

---

[2] While MHA's motion mentions both collateral estoppel and res judicata, only collateral estoppel could apply because MHA was not a party or in privity to a party from the prior suit. *See Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (finding res judicata applies where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter").

> (1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or was in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004) (citing *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 448 (Minn. 2000)). Collateral estoppel is not to be rigidly applied, but rather, "the focus is on whether [its] application would work an injustice on the party against whom the doctrine[ is] urged." *Id.* at 837. Neither party disputes that there was a final judgment on the merits and Feinwachs was a party to the earlier suit. The application of collateral estoppel in this case turns on whether or not the issues are identical.

In arguing that the issues are identical, MHA points to the similarities between the *Feinwachs I* complaint and the present complaint. However, to decide whether collateral estoppel applies, the Court looks to the issues actually litigated, not the factual similarities.[3] *See id.* at 840 ("Whereas collateral estoppel concerns issues that were actually litigated, determined, and were essential in a prior action, res judicata concerns circumstances giving rise to a claim and precludes subsequent litigation – regardless of whether a particular issue or legal theory was actually litigated.") MHA relies on *Magee*

---

[3] MHA also argues that the Court should preclude the litigation because the complaints are the same in substance. However, the only citation given for this proposition is *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326-27 (1955), which is inapposite. In *Lawlor*, the Third Circuit barred a claim based on res judicata, finding that two lawsuits were the "same cause of action" because they were "based on 'essentially the same course of wrongful conduct'" and that "in substance the complaint [was] the same." *Id.* at 326-27 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 211 F.2d 934, 935-37 (3d Cir. 1954)). However, the Supreme Court reversed, finding that the second complaint involved new allegations that actually occurred after the first complaint. *Id.* at 327-28. Additionally, *Lawlor* involved res judicata rather than collateral estoppel. *See id.* at 326.

*v. Hamline University*, which it cites for the proposition that issues are identical for the purposes of collateral estoppel where the "gist" of the claims or issues is identical. 1 F. Supp. 3d 967, 974 (D. Minn. 2014). However, *Magee* is inapplicable in this case, as it involved res judicata, which only requires that the suits involve the "same claim or cause of action," meaning the "same nucleus of operative facts," rather than the more stringent "identical issue" analysis required for collateral estoppel.

The parties have differing views on how broadly to categorize issues decided in the prior state court proceedings. MHA argues that the state court decided the issue of whether Feinwachs' termination was legitimate, whereas Feinwachs argues that the state court only decided whether his termination was based on improper interference by third parties. In some cases, a finding of legitimate termination in one context may bar subsequent litigation over the termination. *See, e.g.*, *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1067 (8th Cir. 1997) (concluding that a prior wrongful termination decision finding "no impropriety" barred a subsequent age discrimination claim); *Peterson v. HealthEast Woodwinds Hospital*, No. A14-1409, 2015 WL 4523558, at *4 (Minn. Ct. App. June 29, 2015) (finding that the dismissal of a FMLA retaliation claim barred whistleblower and wrongful termination claims, which were also based on retaliation). MHA argues that this principle, as espoused in *Bechtold* and *Peterson*, should apply here.

However, the Court must compare the specific issues involved to determine if the present issue is the "same as that adjudicated in the prior action," including whether it was "necessary and essential to the resulting judgment in that action" and whether it was "distinctly contested and directly determined." *Hauschildt*, 686 N.W. 2d at 837-38.

Feinwachs' state case turned on whether Massa made the termination decision himself, rather than due to improper interference from third parties. Here, the pertinent issue is whether Massa made the decision based on Feinwachs' protected activity. Some portions of the *Feinwachs I* opinion suggest a broad finding that Feinwachs' termination was legitimate in all respects. *See* 2011 Minn. Dist. LEXIS 258, at \*24-25 (finding "there can be no genuine fact dispute that once he was confronted with Mr. Feinwachs' behavior (the September video) that was directly contrary to express orders, Mr. Massa's claim of an insubordination-based termination is unassailable"). However, other portions of the opinion suggest a narrower holding, confined solely to the issue of whether the "stated reason for termination, i.e., insubordination, was not a pretext for an improper inducement of his firing" by third parties. *Id.* at \*18-19. This narrower interpretation is strengthened by the fact that *Feinwachs I* and *Feinwachs II* relied, at least partially, on the timing of Feinwachs' termination, which suggested that the termination decision stemmed from Massa himself, rather than from third party interference. The district court wrote:

> Mr. Feinwachs' contention that his firing was induced/orchestrated by health plan and MCHP officials in collaboration with certain MHA board members is undermined by the fact of Mr. Massa's support for Mr. Feinwachs during his conversation with Mr. Eustis just prior to Mr. Massa learning of the September video.

*Feinwachs I*, 2011 Minn. Dist. LEXIS 258, at \*24. The appellate court similarly relied on the timing of Massa's decision: after crediting Feinwachs' testimony that Massa still supported him even when placing him on leave, the court found no evidence of third party influence during the three weeks between Feinwachs' placement on leave and his

termination.  *Feinwachs I*, 2012 WL 4329115, at *6.  This finding contributed to the appellate court's ultimate holding that no fact issue remained as to whether Feinwachs was terminated because of interference from third parties.  *Id.*  This holding does not foreclose the possibility that Massa's decision was based on protected activity, or that "insubordination" was pretext for an improper motive, such as retaliation.

Overall, while portions of the state court decisions suggest a broad finding that Feinwachs' termination was legitimate and based on insubordination, the legal issue and the court's findings were narrower.  The state court found that Feinwachs' termination was not based on tortious interference by third parties, and the court had no reason to go beyond that issue and determine whether Feinwachs' termination was proper in all respects.  Thus, the Court finds that Feinwachs' claim is not barred by collateral estoppel.[4]

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that MHA's Motion to Dismiss [Docket No. 63] is **DENIED**.

DATED:  February 3, 2016  
at Minneapolis, Minnesota.

                             s/ John R. Tunheim  
                             JOHN R. TUNHEIM  
                                  Chief Judge  
                            United States District Court

---

[4] Because the Court finds that collateral estoppel does not bar the present action based on the identical issue element, the Court will not discuss Feinwachs' other arguments, including whether he was given a full and fair opportunity to be heard and whether an inappropriate legal standard was applied in the prior case.