David Feinwachs,

Case No. 11-cv-0008 (WMW/SER)

Plaintiff,

v.

**ORDER**

The Minnesota Hospital Association and
MCCA,

Defendants.

Before the Court is Plaintiff David Feinwachs's appeal of the April 5, 2019 Order of United States Magistrate Judge Steven E. Rau, which denied Feinwachs's motion for further consideration of sealing. Also before the Court are eight motions in limine—six filed by Feinwachs, (Dkts. 199, 212, 221, 333, 371), and two filed by Defendants The Minnesota Hospital Association (MHA) and its subsidiary MCCA, (Dkts. 380, 395). For the reasons addressed below, the April 5, 2019 Order is reversed and remanded, and the motions in limine are granted in part and denied in part.

## BACKGROUND

MHA is a trade association that represents Minnesota hospitals and healthcare systems, and MHA's subsidiary, MCCA, is the organization that directly employs the people who perform the work of MHA. Until the termination of his employment in November 2010, Feinwachs served as MHA's general counsel and lobbyist.

Feinwachs commenced this lawsuit in January 2011, asserting claims against multiple defendants under the federal False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.*,

and the Minnesota False Claims Act (MFCA), Minn. Stat. §§ 15C.01 *et seq.* Over the nearly 9-year history of this lawsuit, multiple claims and defendants have been added and dismissed. At present, Feinwach's two retaliation claims against his former employers, pursuant to the FCA (Count Eight) and the MFCA (Count Nine), are the only remaining claims. Feinwachs alleges that Defendants unlawfully terminated his employment in retaliation for his efforts to stop what he believed to be Medicaid fraud being committed by healthcare companies in Minnesota. Defendants deny that Feinwachs was terminated in retaliation for efforts to stop Medicaid fraud, and they allege that instead Feinwachs was terminated for insubordination.

Feinwachs and Defendants seek rulings on the admissibility of certain evidence at trial. The parties briefed and argued 36 motions in limine in late 2018, most of which were resolved at a November 7, 2018 hearing before Chief Judge John R. Tunheim. Currently before the Court are the motions in limine that were not resolved at that hearing and several additional motions in limine that the parties filed thereafter. In addition, Feinwachs appeals the magistrate judge's April 5, 2019 Order denying Feinwachs's motion for further consideration of sealing.

## ANALYSIS

### I. Plaintiff's Appeal of the April 5, 2019 Order

The Court first addresses Feinwachs's appeal of the magistrate judge's April 5, 2019 Order. That order pertains to the unsealing of certain documents that contain or refer to emails that, according to Feinwachs, are protected by the attorney-client privilege and the work-product doctrine.

A district court applies an "extremely deferential" standard of review to a magistrate judge's ruling on a nondispositive issue. *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). Such a ruling will be modified or set aside only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a)(3); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). A ruling is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted).

### A.     Factual and Procedural Background

On May 19, 2010, and July 12, 2010, before the commencement of this lawsuit, Feinwachs's counsel emailed Feinwachs and his former co-plaintiff, David Kunz, on their respective personal email accounts. These two emails (hereinafter "the 2010 emails") pertain to gathering evidence related to this lawsuit. Kunz subsequently forwarded these emails to Feinwachs, and MHA later discovered on its computer network the emails that Kunz had forwarded.

In preparation for trial, the parties filed motions in limine in October 2018. These motions included Feinwachs's motion to exclude from evidence email communications between himself, Kunz, and their counsel, (Dkt. 217), and Defendants' motion to admit in evidence email communications between Feinwachs, Kunz, and their counsel, (Dkt. 201). Feinwachs opposed Defendants' motion, arguing that these emails are protected by the

attorney-client privilege and work-product doctrine.  Defendants countered that, because the emails were effectively disclosed to Defendants when the emails were forwarded to MHA's computer network, any such protections have been waived.  At the November 7, 2018 hearing on the parties' motions in limine, Chief Judge Tunheim concluded that the emails found on MHA's computer network were "not private" and, therefore, not protected by the attorney-client privilege.  Chief Judge Tunheim did not render a decision as to whether the work-product doctrine applies to any of the disputed emails.

The parties filed a joint motion regarding continued sealing in December 2018, pursuant to Local Rule 5.6(d)(2), in which the parties disagreed about whether the 2010 emails should remain under seal.  On February 8, 2019, the magistrate judge ordered the unsealing of memoranda, declarations, and exhibits that contain or address the 2010 emails. Thereafter, Feinwachs moved for further consideration of sealing, *see* LR 5.6(d)(3), arguing that documents that contain or discuss the 2010 emails should remain under seal because they are protected by the attorney-client privilege and the work-product doctrine.

The magistrate judge denied Feinwachs's motion for further consideration of sealing.  Relying on the law-of-the-case doctrine, the magistrate judge concluded that Chief Judge Tunheim's prior rulings on the parties' motions in limine at the November 7, 2018 hearing is controlling because prior rulings "should continue to govern the same issues in subsequent stages in the same case."  *United States v. Carter*, 490 F.3d 641, 644 (8th Cir. 2007) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  Because Chief Judge Tunheim previously deemed the 2010 emails to be "not private," the magistrate judge reasoned that Feinwachs cannot rely on the protections of either the attorney-client

privilege *or* the work-product doctrine to support the continued sealing of these documents. Feinwachs argued that Chief Judge Tunheim had reserved ruling on whether the work-product doctrine applies to the 2010 emails, but the magistrate judge deemed this argument to be "irrelevant." The magistrate judge found that Chief Judge Tunheim's statement that he would "take a further look at [the emails] and resolve [the work-product issue] later" referred to a different motion in limine that addressed a different set of emails. For these reasons, the magistrate judge denied Feinwachs's motion for further consideration of sealing.

**B.    Analysis**

As the magistrate judge correctly observed, the purpose of the law-of-the-case doctrine is to prevent relitigating a settled issue in a case. *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1134-35 (8th Cir. 2007). This doctrine provides that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Id.* (internal quotation marks omitted). The law-of-the-case doctrine protects the settled expectations of the parties, ensures the uniformity of decisions, and promotes judicial efficiency. *Id.* at 1135. As the magistrate judge correctly observed, Chief Judge Tunheim determined that the emails on MHA's computer network were "not private" and that the attorney-client privilege has been waived as to those emails. Nothing in the record suggests that Chief Judge Tunheim *reserved* any aspect of his decision that the attorney-client privilege had been waived. To the extent that Feinwachs continues to assert the protection of the attorney-client privilege to support sealing emails that were

found on MHA's computer network, his argument is foreclosed by the law-of-the-case doctrine.

Feinwachs also argues, however, that the work-product doctrine renders the 2010 emails confidential and, therefore, subject to continued sealing in this case. The law-of-the-case doctrine is inapplicable, he argues, to the extent that he is asserting protection under the work-product doctrine as to these two emails because Chief Judge Tunheim reserved ruling on that issue. The magistrate judge disregarded this argument as "irrelevant," finding that Chief Judge Tunheim's decision to delay ruling on the work-product issue was "unrelated to the emails" that are the subject of Feinwachs's motion for further consideration of sealing. This finding is erroneous.

At the November 7, 2018 hearing, Feinwachs argued that protection under the work-product doctrine has not been waived with respect to the 2010 emails even if the attorney-client privilege has been waived with respect to those emails. In response to this argument, Chief Judge Tunheim stated that he would "take a further look" at the disputed emails to consider whether any are "work product, as opposed to privilege[d]," and that the Court would "resolve it later." The record does not support the magistrate judge's finding that this statement pertained to a different group of emails. Rather, this statement pertained to the 2010 emails.

Feinwachs subsequently filed a supplemental motion in limine re-asserting the work-product doctrine as to the 2010 emails. That motion had not been decided by the Court at the time of the magistrate judge's April 5, 2019 Order. Fainwachs's supplemental

motion in limine is addressed below in Part II.E. of this Order.[1]  As such, the law-of-the-case doctrine did *not* foreclose Feinwachs's work-product arguments in support of his motion for further consideration of sealing.

For these reasons, the magistrate judge clearly erred in the April 5, 2019 Order by denying Feinwachs's motion for further consideration of sealing based on the law-of-the-case doctrine.  The April 5, 2019 Order is reversed to the extent that it ordered any document unsealed on that basis.  As addressed in Part II.E. below, the Court now concludes that the 2010 emails were created in anticipation of litigation and *are* opinion work product.  Accordingly, the sealing issue is remanded to the magistrate judge for further proceedings consistent with this Order.

## II.    Plaintiff's Motions in Limine

Feinwachs moves to exclude evidence of (1) the dismissal of his underlying *qui tam* claims, (2) his advocacy of gun ownership rights, (3) the terms of his contingency fee arrangement with his attorney, (4) the past lobbying efforts by Feinwachs and his attorney relating to the MFCA, (5) emails between Feinwachs and his attorney that were discovered on MHA's computer network, and (6) certain aspects of Feinwachs's alcohol treatment records.  The Court addresses each motion in turn.

---

[1]     Defendants' assertion that the Court "ignored" Feinwachs's motion is incorrect.  After Feinwachs filed his December 13, 2018 supplemental motion in limine, this case was transferred from Chief Judge Tunheim to the undersigned United States District Judge on March 11, 2019.  The fact that the motion remained pending does not reflect that it was "ignored" by the Court.

**A.    Dismissal of *Qui Tam* Claims**

Feinwachs moves to exclude evidence of, or reference to, the fact that he initially asserted, and later voluntarily dismissed, *qui tam* claims in this case.  He argues that such evidence is irrelevant and its probative value, if any, is substantially outweighed by the danger of unfair prejudice and confusing the jury.  *See* Fed. R. Evid. 402, 403.  Defendants counter that this evidence is relevant to liability and damages and that excluding this information would confuse the jury.

Feinwachs initially commenced this lawsuit as a *qui tam* action alleging FCA claims against several health maintenance organizations (HMOs).  After the United States declined to intervene in March 2015, the Court granted Feinwachs's motion to voluntarily dismiss, without prejudice, Feinwachs's FCA claims against the HMO defendants.  At the November 7, 2018 hearing, Chief Judge Tunheim granted Feinwachs's related motion to exclude evidence of or reference to the decision of the United States not to intervene in the *qui tam* action, concluding that such evidence is irrelevant and potentially prejudicial.  But Chief Judge Tunheim denied Feinwachs's related motion to exclude evidence that no court or agency has ever found that the HMOs engaged in fraud, concluding that such evidence is relevant to the objective reasonableness of Feinwachs's belief that fraud was being committed.  Chief Judge Tunheim deferred ruling on whether to exclude evidence that Feinwachs initially asserted, and later voluntarily dismissed, his *qui tam* claims in this case.

The FCA prohibits retaliation against an employee "because of lawful acts done by the employee . . . in furtherance of an [FCA] action . . . or other efforts to stop 1 or more [FCA] violations."  31 U.S.C. § 3730(h)(1).  To establish retaliation under the FCA, a

"plaintiff must prove that (1) the plaintiff was engaged in conduct protected by the [FCA]; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity." *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 470 (8th Cir. 2016) (internal quotation marks omitted). As "[t]he text of the MFCA retaliation provision . . . is substantially similar to the federal corollary," *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 968-69 (D. Minn. 2015), courts analyze MFCA claims under the same legal standard as analogous FCA claims, *Olson v. Fairview Health Servs.*, 831 F.3d 1063, 1069 n.6 (8th Cir. 2016).

"The protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation." *Schuhardt v. Wash. Univ.*, 390 F.3d 563, 567 (8th Cir. 2004). The FCA's anti-retaliation provision "protects an employee's conduct even if the target of an investigation or action to be filed was innocent." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005); *accord Townsend v. Bayer Corp.*, 774 F.3d 446, 459-60 (8th Cir. 2014).

Neither filing a *qui tam* claim, nor prevailing on the merits of a *qui tam* claim, is a prerequisite to proving the elements of Feinwachs's retaliation claims. As such, evidence that Feinwachs filed such claims after his termination and later dismissed those claims has no relevance to any claim or defense to liability with respect to Feinwachs's retaliation claims. Defendants contend that excluding this evidence "will create negative and inaccurate inferences that fraud occurred and MHA was associated with it." But the Court

previously ruled that Defendants may present evidence that no court or agency has ever found that the HMOs engaged in fraud. Such evidence, if presented, would alleviate the inferences about which Defendants are concerned.

According to Defendants, evidence that Feinwachs filed, and later dismissed, his *qui tam* claims is relevant to damages because it demonstrates that Feinwachs "was extraordinarily busy dedicating time to his ultimately unsuccessful repeat lawsuits and did very little to mitigate his damages by finding a comparable new job." Although this evidence may have some marginal relevance to damages, the minimal probative value of this evidence is substantially outweighed by the dangers of unfair prejudice and confusing or misleading the jury. *See* Fed. R. Evid. 403. Admitting this evidence risks creating improper inferences with respect to liability even though, as addressed above, this evidence is irrelevant to liability. Moreover, this evidence is unnecessarily cumulative in light of other evidence that Defendants purportedly intend to introduce as to Feinwachs's alleged failure to mitigate damages, as demonstrated in Defendants' pretrial filings.

For these reasons, Feinwachs's motion to exclude evidence that he initially asserted, and later voluntarily dismissed, *qui tam* claims in this case is granted.

## B. Advocacy of Gun Ownership Rights

Feinwachs moves to exclude evidence of or reference to his advocacy of gun ownership rights. He argues that such evidence is irrelevant and its probative value, if any, is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 402, 403. Defendants argue that evidence of Feinwachs's gun advocacy activities is relevant to the issue of Feinwachs's alleged insubordination because Feinwachs was "specifically warned

during his employment with MHA to back off on some of his gun advocacy" and Feinwachs "had knowledge of needing to be mindful of [MHA's] members' interests on sensitive issues."

At the November 7, 2018 hearing, Chief Judge Tunheim granted this motion in part as follows:

> I will grant that motion mostly. I'm going to preclude the defendant from referencing gun advocacy, [and] the value of Mr. Feinwachs' collection. This doesn't necessarily mean that we'll avoid every reference to guns. There may be minimal references that are necessary to explain Mr. Feinwachs' connection to witnesses or e-mails or something like that, so I don't think it's necessary to completely eliminate any mention of that. But the fact that he has a gun collection that has value and [his] separate advocacy for gun rights I think, generally speaking, should be excluded for prejudicial sake.

Neither party has sought reconsideration of this aspect of Chief Judge Tunheim's ruling, and the Court discerns no reason to do so. The foregoing ruling remains in effect. Any objections as to the applicability of the foregoing ruling to particular exhibits or testimony will be addressed, as necessary, in the course of trial.

One limited aspect of this motion remains unresolved, however. According to Defendants, Feinwachs was "specifically warned during his employment with MHA to back off on some of his gun advocacy." As such, Defendants argue, this evidence is relevant to rebut Feinwachs's assertion that MHA permitted him to take advocacy positions that were inconsistent with MHA and, by extension, it is relevant to whether Feinwachs's termination was based on insubordination. Chief Judge Tunheim deferred ruling on the relevance of this evidence, requesting supplementation of the record with exhibits demonstrating that MHA raised concerns about Feinwachs's gun advocacy activities

during his employment and that Feinwachs had knowledge of these concerns. Thereafter, the parties supplemented the record with exhibits and brief written argument, which the Court has reviewed.

There is no evidence of or suggestion in the record that Feinwachs's termination was based on his gun advocacy activities. The alleged insubordination that occurred immediately before Feinwachs's termination was unrelated to his gun-advocacy activities, and those gun-advocacy activities are not referenced in the letters sent to Feinwachs in October and November 2010 that explained the reasons for placing him on administrative leave and terminating his employment. The fact that Feinwachs may have been warned in the past to be "mindful of [the] impact of [his] NRA connections" has little, if any, bearing on MHA's motivation to terminate Feinwachs's employment in November 2010. To the extent that this warning has any minimal probative value, that value is substantially outweighed by the danger of unfair prejudice.

Accordingly, this unresolved aspect of Feinwachs's motion to exclude evidence of his gun-advocacy activities is granted. Evidence that Defendants raised concerns about Feinwachs's gun advocacy activities and made efforts to limit those activities will be excluded at trial. In all other respects, Chief Judge Tunheim's November 7, 2018 ruling on this motion remains in effect as addressed herein.

### C. Contingency Fee Arrangement with Counsel

Feinwachs moves to exclude any evidence of or reference to the date and terms of the contingency fee agreement that he entered into with his attorney, asserting that this evidence is irrelevant. At the November 7, 2018 hearing, Chief Judge Tunheim observed

that "generally speaking, this is irrelevant, but I will defer a ruling on this motion until we see exactly how the evidence goes. There may be certain instances in which it might become relevant." The Court concurs with this assessment of this issue. The Court will rule on any objection to the admissibility of such evidence, if offered, in the context of trial. The pending motion to exclude this evidence is, therefore, denied.

### D. Lobbying Efforts

Feinwachs moves to exclude any evidence of or reference to the fact that, before 2010, Feinwachs lobbied the Minnesota legislature against portions of the MFCA and his trial attorney lobbied in favor of the MFCA. Feinwachs contends that this evidence is irrelevant and risks confusing the jury. *See* Fed. R. Evid. 402, 403. Defendants counter that Feinwachs's history with and knowledge of the MFCA is relevant to whether Feinwachs had a reasonable belief that his conduct could lead to a viable MFCA or FCA action, which is an essential element of Feinwachs's claims.

The protected-activity element of an FCA retaliation claim is proven if the employee's actions satisfy two conditions. *Schuhardt*, 390 F.3d at 567. First, the employee's conduct must have been performed in furtherance of an FCA action. *Id.* Second, the employee's conduct must be aimed at matters that reasonably could lead to a viable FCA action. *Id.* To satisfy this second condition, the employee must prove that he or she "in good faith believe[d]" that a fraud against the government was occurring. *Id.* For this reason, according to Defendants, Feinwachs's prior experience lobbying against the MFCA—which mirrors the FCA—is relevant to whether he had a good-faith belief that his conduct could lead to a viable MFCA or FCA action.

At the November 7, 2018 hearing, Chief Judge Tunheim observed that the "resolution of this issue depends on the nature of the testimony by Mr. Feinwachs. If there's testimony that he for some reason didn't understand the FCA, I think this all of a sudden becomes relevant on that issue, but I will defer ruling on this until the testimony." The Court concurs with this assessment of this issue. The Court will rule on any objection to the admissibility of such evidence, if offered, in the context of trial. The motion to exclude this evidence is, therefore, denied.

### E.    Emails Between Feinwachs and Defense Counsel

Feinwachs moves to exclude any evidence of or reference to the 2010 email communications involving him, his former co-plaintiff, and Feinwachs's counsel. Feinwachs maintains that the 2010 emails are protected by the work-product doctrine.

At the November 7, 2018 hearing, Chief Judge Tunheim concluded that the emails discovered on MHA's computer network are "not private" and that the attorney-client privilege has been waived as to those emails. As addressed above in Part I of this Order, that ruling is the law of the case. But at a later point in the November 7, 2018 hearing, when Feinwachs asserted that the work-product doctrine nonetheless applies to the two disputed 2010 emails, Chief Judge Tunheim stated that he would "take a further look" to determine whether the disputed emails are "work product, as opposed to privilege[d]," and that the Court would "resolve it later." Subsequently, Feinwachs filed the pending motion in limine, which asserts that the 2010 emails are protected by the work-product doctrine. As such, the Court must now determine whether the work-product doctrine applies to the 2010 emails.

The work-product doctrine "limits the access of an opponent to materials 'prepared in anticipation of litigation or for trial.' " *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The party invoking the work-product doctrine "bears the burden of establishing the elements of work product immunity." *Id.* at 925. To do so, the party seeking protection must establish that the materials were prepared "in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). The United States Court of Appeals for the Eighth Circuit has "distinguish[ed] between two kinds of work product: ordinary work product, which includes raw factual information, and opinion work product, which encompasses counsel's mental impressions, conclusions, opinions or legal theories." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotation marks omitted). Opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* (internal quotation marks omitted).

Defendants first argue that the 2010 emails were not prepared in anticipation of litigation. To establish that these emails were created in anticipation of litigation, Feinwachs need not demonstrate that litigation was already in progress. *Hickman v. Taylor*, 329 U.S. 495, 498, 514 (1947). Instead, a document is prepared in anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). Here, the 2010 emails were drafted by Feinwachs's attorney approximately six and

eight months, respectively, before Feinwachs commenced this lawsuit. And the substance of the 2010 emails pertains to gathering evidence related to this lawsuit. The 2010 emails clearly reflect counsel's mental impressions, conclusions, opinions, and legal theories. As such, the 2010 emails were created in anticipation of litigation and are opinion work product.

Defendants also contend, however, that because these emails effectively were disclosed to Defendants when they were forwarded to MHA's computer network, any work-product protection has been waived. Under Eighth Circuit law, a party must *intend* for an adversary to see work product in order to waive the work-product protection through disclosure. *Grundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998) ("Although disclosure to an adversary ordinarily waives work product protection, there must be an intention that the opposing party see the work product."); *see also Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997). Here, the 2010 emails initially came into the possession of Defendants because Feinwachs's former co-plaintiff forwarded them from a personal email account to Feinwachs's MHA work email account. Nothing in the record suggests that Feinwachs, his former co-plaintiff, or his attorney ever intended for an adversary (or any other third party) to see the 2010 emails. Accordingly, work-product protection has not been waived as to these emails.

For these reasons, Feinwachs's motion is granted to the extent that it seeks to exclude any evidence of or reference to the 2010 emails.[2]

---

[2]     Feinwachs's motion also seeks to preclude Defendants from calling Feinwachs's attorney as a witness. In response, Defendants assert that they do not intend to call

## F.     Alcohol Treatment Records

Feinwachs moves to exclude any evidence of or reference to specific entries in his medical treatment records from the Hazelden Betty Ford Foundation treatment center. These entries—which predate the termination of Feinwachs's employment—include references to Feinwachs's drug use, threats of violence and suicide, threatening and abusive language, and history of abuse during childhood. Feinwachs argues that this evidence is irrelevant to the termination of his employment and its probative value, if any, is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 402, 403.

Defendants counter that this evidence is relevant in two primary ways. First, Defendants argue that this evidence is critical to their defense against Feinwachs's allegations that they caused him emotional distress—namely, to establish Feinwachs's preexisting conditions and negate causation. Second, Defendants contend that this evidence is probative of Feinwachs's credibility.

The FCA's anti-retaliation provision permits recovery of, among other things, "compensation for any special damages sustained as a result of the discrimination." 31 U.S.C. § 3730(h)(2). "Damages for emotional distress caused by an employer's retaliatory conduct plainly fall within this category of special damages." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) (internal quotation marks omitted); *accord Townsend*, 774 F.3d at 466-67. When seeking emotional distress

---

Feinwachs's attorney as a witness if it "would be cumulative or unnecessary." This aspect of Feinwachs's motion in limine is premature. The Court will rule on any objection to the admissibility of such evidence, if offered, in the context of trial. This aspect of the motion is, therefore, denied.

damages under the FCA, "a plaintiff must offer specific facts as to the nature of his or her claimed emotional distress and its causal connection to the allegedly violative actions." *Hammond*, 218 F.3d at 893.

Here, the record reflects that Feinwachs seeks to recover at least $1.5 million dollars in damages for emotional distress allegedly caused by Defendants' termination of his employment. As such, at the November 7, 2018 hearing, Chief Judge Tunheim granted Defendants' motion to admit evidence pertaining to Feinwachs's alleged emotional distress damages, including Feinwachs's medical history and related expert testimony.[3] In doing so, Chief Judge Tunheim acknowledged the sensitivity of this evidence, but he also recognized that it is relevant to Defendants' defense:

> I appreciate the sensitivity of these records. I do think they are probably, at least to a minimal extent, necessary for the jury to properly evaluate a large emotional distress damages claim. So the defendant, in the Court's view, may refer to treatment records. In appreciating the sensitivity, I think they should be used only to the minimal extent necessary to allow the jury to properly evaluate the claim. . . . I just don't want to have days of testimony on issues like this and it becomes a trial about Mr. Feinwachs' mental health issues.

> This is necessary, I think, only for evaluating the emotional distress claim. I think the defendants cannot be prohibited from using these records. I do think there is ample opportunity for Mr. Feinwachs or his witnesses to explain the circumstances, and so it really goes to the weight of this evidence, the extent that the jury wants to consider it for the emotional distress claim.

---

[3]     In addition, Chief Judge Tunheim denied Feinwachs's motions in limine to exclude evidence of Feinwachs's alcohol treatment, evidence from MHA's medical expert, and references to the fact that Feinwachs did not seek emotional distress damages in his state court lawsuit. Chief Judge Tunheim also ruled that MHA's medical expert will be permitted to make general references to Feinwachs's estrangement from his daughter and strained relationship with his mother, but that the underlying details of these relationships are not relevant.

Chief Judge Tunheim deferred ruling on the relevance of this evidence for other purposes, such as to impeach the credibility of Feinwachs as a witness.

The Court concurs with Chief Judge Tunheim's assessment of this issue and applies the same reasoning to the specific evidence identified in Feinwachs's renewed motion on this issue. Any objections as to the scope or applicability of the foregoing ruling with respect to particular exhibits or testimony—as well as the admissibility of this evidence for other purposes, such as impeachment—will be addressed, as necessary, in the course of trial. Feinwachs's motion to exclude this evidence, therefore, is denied.

## III.    Defendants' Motions in Limine

Defendants move to exclude the testimony of witness Eileen Smith and object to Feinwachs's anticipated use of deposition testimony at trial in lieu of live testimony. The Court addresses each of Defendants' motions in turn.

### A.    Testimony of Eileen Smith

Defendants move to exclude the testimony of witnesses who Feinwachs did not disclose during discovery. The substance of Defendants' brief on this motion involves witness Susan Stout. At the November 7, 2018 hearing, Chief Judge Tunheim denied Defendants' motion to exclude Stout's testimony, concluding that the parties had sufficient time after Stout was disclosed in 2017 to resolve any issues pertaining to her testimony. At the end of the hearing, however, Defendants identified a second witness who had not been disclosed during discovery but nonetheless was included on Feinwachs's witness list: Eileen Smith. Chief Judge Tunheim deferred ruling on whether Smith would be permitted to testify at trial.

If a party fails to provide information or identify a witness as required by the Federal Rules of Civil Procedure, that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When deciding whether nondisclosure of a witness is substantially justified or harmless, courts consider the importance of the testimony, the reason for the failure to timely disclose the witness, the potential prejudice that would arise from allowing the evidence to be used at trial, and the ability to cure the late disclosure. *See Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994).

The record contains little information as to Smith because neither party properly briefed this motion as it pertains to Smith's testimony, instead choosing to repeat their arguments pertaining to the resolved issue of Stout's testimony. At the November 7, 2018 hearing, Feinwachs's counsel suggested that the purpose of Smith's testimony is merely to authenticate an email, and Defendants' counsel asserted that such testimony would not be necessary. Consequently, Chief Judge Tunheim deferred ruling on Smith's testimony, suggesting that "maybe the parties could stipulate as to the e-mail just to make sure that it gets in," in which case "maybe Ms. Smith is not necessary." And at the July 24, 2019 hearing, counsel suggested that an agreement to conduct a late deposition of Smith could have alleviated any risk of prejudice. Despite being afforded nearly a year to resolve this seemingly minor dispute, as urged by Chief Judge Tunheim, neither party has made any apparent effort to do so.

Because Defendants have not demonstrated that they will be unduly prejudiced if Smith is permitted to testify or that they lacked the opportunity to alleviate any negative

impact of the late disclosure, the Court concludes that the untimely disclosure of Smith as a witness is harmless. *See* Fed. R. Civ. P. 37(c)(1). Defendants' motion is denied.

## B.     Use of Deposition Testimony

Defendants object to Feinwachs's designation of deposition testimony to be used at trial in lieu of live testimony from two witnesses—Matthew Anderson and Lawrence Massa.[4]

With respect to Anderson, Defendants contend that the Federal Rules of Civil Procedure do not permit the use of deposition testimony in lieu of live testimony because Anderson was not an employee of MHA when he was deposed. "An adverse party may use for any purpose the deposition of a party or anyone who, *when deposed*, was the party's officer, director, managing agent, or designee . . . ." Fed. R. Civ. P. 32(a)(3) (emphasis added). Although Anderson currently is a senior vice president of MHA, it is undisputed that he was not employed by MHA when his deposition occurred in October 2016. Feinwachs has advanced no other basis under Rule 32(a) that would permit the use of Anderson's deposition testimony in lieu of live testimony, and the Court has identified none. For these reasons, Defendants' objections are sustained as to Anderson, and Feinwachs shall not use Anderson's deposition testimony in lieu of live testimony at trial.

By contrast, Massa undisputedly is the CEO of MHA, and he held that position when he was deposed in November 2016. In light of these facts, Rule 32(a)(3) permits the

---

[4]     Defendants also object to Feinwachs's designation of deposition testimony from witness Mark Skubic. But because Feinwachs subsequently withdrew the deposition designation of Skubic, the issue is now moot.

use of Massa's deposition testimony at trial "for any purpose." *See* Fed. R. Civ. P. 32(a)(1), (3). But Defendants contend that Massa's deposition testimony should not be permitted in lieu of live testimony because he is available to testify live and use of his deposition testimony will be inefficient, duplicative, and confusing to the jury.

Whether to admit deposition testimony in evidence at trial rests within the district court's broad discretion. *Lear v. Equitable Life Assurance Soc'y*, 798 F.2d 1128, 1135 (8th Cir. 1986); *accord Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310 F.R.D. 341, 344 (E.D. Mich. 2015). It also is within a district court's "broad discretion to conduct [a] trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives" to ensure the fair and complete presentation of evidence. *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (internal quotation marks omitted) (reviewing evidentiary rulings in the context of Federal Rule of Evidence 106); *see also* Fed. R. Evid. 106 advisory committee's note (explaining that Rule 106 "is an expression of the rule of completeness" and "is substantially a restatement" of the analogous rule applicable to depositions pursuant to Federal Rule of Civil Procedure 32(a)). A district court may exclude otherwise admissible evidence if the probative value of such evidence is substantially outweighed by countervailing dangers, including "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Although Federal Rule of Civil Procedure 32(a)(3) permits a party to use the deposition testimony of an opponent's corporate officer for any purpose, district courts often "require that a deposed witness testify live, if available" because "it is always better

if the jury can observe the witness firsthand to judge [the witness's] demeanor." *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989-90 (8th Cir. 1999) (internal quotation marks omitted). "The practice cannot possibly cause unfair prejudice, because the party wishing to use deposition testimony can call the adverse witness live, impeach [the adverse witness] with the deposition if necessary, and even question the witness using the exact same questions asked at the deposition." *Id.* at 990 (affirming district court's refusal to permit plaintiff to use the deposition testimony of defendant's corporate officer, who was available to testify); *Gonzalez Prod. Sys.*, 310 F.R.D. at 344 (reasoning that, although the deposition of a party's corporate representative may be used for any purpose, "nothing in the [rule] indicates that [it] may be used *at any time or in any manner* as a party sees fit").

Feinwachs seeks to present at least two hours of excerpted video deposition testimony in lieu of live testimony from Massa. Although not dispositive of the admissibility of this deposition testimony, the Court is mindful of the general preference for live testimony when it is available. Here, not only is Massa available, but Defendants intend to call him during their case-in-chief. In addition, Defendants have asserted objections to nearly four dozen portions of Massa's deposition testimony that they seek to have redacted, and many of those objections advance multiple alternative bases for exclusion. In response, Feinwachs has withdrawn several portions of his initial deposition designations with respect to Massa, which moots some of Defendants' objections but also creates additional gaps in the flow of the testimony. And more than two dozen disputed portions of Massa's deposition testimony remain unresolved, subject to potentially more redaction or frequent objections during the trial. In short, the presentation of Massa's

testimony via videotape deposition very likely would be disjointed and confusing for a jury, particularly when contrasted with his presentation of live testimony that is expected to be provided later in the trial. Presenting Massa's testimony in the manner Feinwachs seeks also increases the risk of undue delay, wasted time, and cumulative evidence. *See, e.g.*, *Gonzalez Prod. Sys.*, 310 F.R.D. at 344 (prohibiting use of video deposition evidence in lieu of live testimony when it was "not readily clear how [defendant] can randomly and freely use these video depositions in an efficient manner without belaboring the trial process"). Moreover, to the extent that Massa's live testimony contradicts his prior testimony, Feinwachs may offer Massa's prior statements made in the videotaped deposition for impeachment purposes.[5]

For these reasons, Defendants' objections are sustained as to Massa, and Feinwachs will not be permitted to use Massa's deposition testimony in lieu of live testimony at trial.[6]

---

[5] Feinwachs contends that "being required to impeach over and over again completely destroys the flow of the questions." Nonetheless, the Federal Rules of Evidence provide for impeachment by a prior inconsistent statement in a manner consistent with this ruling. Feinwachs also asserts that Massa has "had the opportunity to re-read the deposition transcript to find 'better' ways to answer the questions." But this benefit flows both ways— Feinwachs's counsel similarly has had the opportunity to prepare "better" ways to *ask* the questions.

[6] Defendants also object to three portions of the designated deposition testimony of Dr. Terence Pladson. But Defendants provide little detail as to the basis for their objections or the context in which the disputed testimony appears, and Feinwachs did not respond to these objections. As such, the Court will address these objections, as necessary, in the course of trial.

### IV.    Miscellaneous Pretrial Issues

The Court next addresses several additional pretrial issues that were raised at the July 24, 2019 pretrial hearing.

Defendants seek permission to fully examine witnesses called during Feinwachs's case-in-chief, rather than recalling those witnesses during Defendants' case-in-chief. Defendants' request is denied.  If Defendants wish to conduct a direct examination of a witness called by Feinwachs, they must recall that witness during their case-in-chief.

The parties also inquired as to whether the jurors will be given a draft copy of the final jury instructions at the beginning of trial, with the disclaimer that the draft is subject to change and only the final version should be considered during deliberations.  The Court concludes that such a procedure presents a risk of confusing the jury.  As such, the final jury instructions will be provided to the jurors orally and in writing immediately before they begin their deliberations.

The parties also jointly request permission to provide "Pre-Voir Dire 'mini' opening statements" to help prospective jurors better understand the case.  This request is denied. The Court's standard voir dire process, including the statement of the case and questions presented to potential jurors, will adequately apprise the prospective jurors of the relevant details of the case for the purpose of voir dire.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      The April 5, 2019 Order, (Dkt. 359), is **REVERSED** and the sealing issue is **REMANDED** to the magistrate judge for further proceedings consistent with this Order.

2.       Plaintiff's motion to exclude evidence of the dismissal of his underlying *qui tam* claims, (Dkt. 199), is **GRANTED**.

3.      Plaintiff's motion to exclude evidence of his advocacy of gun ownership rights, (Dkt. 212), is **GRANTED IN PART** as addressed herein and as consistent with the Court's November 7, 2018 ruling.

4.      Plaintiff's motion to exclude evidence of the terms of his contingency fee arrangement with his attorney, (Dkt. 221), is **DENIED**.

5.      Plaintiff's motion to exclude evidence of lobbying efforts by Feinwachs and his attorney pertaining to the Minnesota False Claims Act, (Dkt. 221), is **DENIED**.

6.      Plaintiff's motion to exclude evidence of the July 12, 2010 email, (Dkt. 333), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

7.      Plaintiff's motion to exclude evidence pertaining to his alcohol treatment records, (Dkt. 371), is **DENIED**.

8.      Defendants' motion to exclude testimony, (Dkt. 380), is **DENIED**.

9.      Defendants' objections to Plaintiff's amended designation of deposition testimony, (Dkt. 395), are **SUSTAINED IN PART**, as addressed herein.

10.     This matter is now scheduled for trial beginning on **Monday, January 27, 2020**.

Dated:  September 11, 2019                          s/Wilhelmina M. Wright
                                                   Wilhelmina M. Wright
                                                   United States District Judge